# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY RUBY, | ) | |
|     Plaintiff, | ) | Civil Action No. 15-37Erie |
| | ) | |
| v. | ) | |
| | ) | |
| DR. CRAIG RUSH, et al, | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

## MEMORANDUM OPINION[1]

M.J. Susan Paradise Baxter

### I.     Relevant Procedural History

This case was removed to this Court from Erie County Court of Common Pleas by Defendants. In the original complaint filed in state court, Plaintiff brings legal claims arising out of his incarceration at Erie County Prison between May 19, 2012, and December 22, 2012.

Individuals named as Defendants are: Dr. Craig Rush and Dr. Brenda Stillman, psychiatrists employed by Stairways Mental Health, and Frank Quinn and Andrea Zeiber, mental health counselors employed by Stairways; Selena Laufenberg and Christina Mealy, employed by Wexford Health Services; Deputy Warden Michael Holman of the Erie County Prison; and several John and Jane Does. Plaintiff also names the following entities as Defendants to the action: the Erie County Prison, Stairways Mental Health and Wexford Health Services.

The complaint offers very few factual allegations beyond the following. At the time of his commitment to Erie County Prison, Plaintiff alleges that he provided the medical department

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

with information regarding his medical history, medications taken for his mental health and medical conditions, dietary restrictions, and other related information. Plaintiff claims his medical history included depression, irritable bowel syndrome, colitis, chronic fatigue syndrome, low back pain and sciatica, neck and arm pain due to herniated discs in his cervical spine, stomach ulcers, psoriasis, arthritis, sinusitis, and multiple food allergies/intolerances. Plaintiff claims he was on the following prescription medications: Celexa, Celebrex, Zanax, Lortabs, Loprimide, Flonase, Asiphex, Colozol, and Flexeril, as well as four cans of Ensure protein drink per day. Plaintiff alleges that despite the information provided by him to the medical department, he was refused an appointment with his outside neurosurgeon, was denied medications, special diet and physical therapy, that he was forced to suffer physical pain, mental anguish, and hunger causing him to lose 25 pounds and to attempt suicide. ECF No. 1-2.

Based on these factual allegations, Plaintiff advances four separate legal claims: at Count I, Plaintiff brings a negligence claim against Drs. Rush and Stillman based on their failure to diagnose and treat his depression; at Count II, Plaintiff brings a negligence claim against P.A. Mealy based on the failure to diagnose and treat his "multiple medical disorders"; at Count III, Plaintiff brings a negligence claim against John Doe (who has been identified as Gary Peterson, D.O.)[2] based on his failure to diagnose and treat Plaintiff's "multiple medical disorders"; and at Count IV, Plaintiff claims that all named Defendants exhibited deliberate indifference to his medical needs in violation of his Eighth Amendment rights.

In response to the complaint, Defendants Quinn, Zeiber and Stairways Behavioral Health filed a motion to dismiss [ECF No. 6], and a supplemental motion to dismiss or in the alternative motion for summary judgment [ECF No. 22]; Defendants Holman and Erie County Prison filed a motion to dismiss [ECF No. 9]; Defendant Stillman filed a motion to dismiss, or in the

---

[2] See ECF No. 48.

alternative a motion to strike, or in the alternative a motion for more definite statement [ECF No. 12], and a supplemental motion by the same name [ECF No. 23]; Defendants Laufenberg, Mealy and Wexford Health filed a motion to dismiss [ECF No. 31]; and Defendant Rush filed a motion to dismiss [ECF No. 35]. Plaintiff has filed briefs in opposition to these pending dispositive motions. See ECF Nos. 53-59. Reply briefs have been filed by some Defendants. See ECF Nos. 60-63. These motions are fully briefed and are ripe for disposition by this Court.

## II. Standards of Review

### A. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### B. Motion to Dismiss pursuant to Federal Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469,

4

at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." Tracinda Corp. v. DaimlerChrylser AG, 197 F.Supp.2d 42, 53 (D.Del. 2002) citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Indeed, the Supreme Court has held that a complaint is properly dismissed under Rule 12(b) where it does not allege "enough facts to state a claim to relief that is plausible on its facts," Twombly, 550 U.S. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The question is not whether the plaintiff will prevail in the end but, rather, whether the plaintiff is entitled to offer evidence in support of his or her claims. Swope v. City of Pittsburgh, 90 F.Supp.3d 400, 405 (W.D. Pa. 2015) citing Oatway v. American International Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003).

5

**C. Motion for More Definite Statement pursuant to Federal Rule 12(e)**

Rule 12(e) provides, that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Because Rule 8 requires only a short and plain statement of the claim, motions for a more definite statement are "highly disfavored." Therefore, 12(e) motions will be granted only "if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading." Fed.R.Civ.P. 12(e).

### III. The Prison Litigation Reform Act

**A. The Exhaustion Requirement**

All Defendants have raised failure to exhaust as a basis for dismissal of Plaintiff's complaint. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA

without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[4]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated

---

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[4] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

7

objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

### B. The Administrative Process Available to Inmates of Erie County Prison

The Erie County Prison Handbook explains the grievance procedure available to inmates. Following an attempt at an informal resolution of the complaint, an inmate may file a grievance to: report an alleged violation of civil, constitutional or statutory rights; report an alleged violation of prison policy; report an alleged criminal or prohibited act by a staff member; or report an alleged condition existing within the prison that creates an unsafe or unsanitary living condition. A decision on the initial grievance will be issued within twenty days of the filing of the grievance.

If the inmate is not satisfied with the response to the initial grievance, the inmate may

appeal to the Warden within five working days. The Warden (or an assigned staff member) shall make a determination on the appeal and will reply to the inmate within ten days. The Warden's decision is final. ECF No. 9-3.

### C. Plaintiff's use of the grievance process

Plaintiff attempted to grieve only some of the legal claims raised in his complaint. Plaintiff filed four separate grievances about his health care, but each of the four grievances only mentions Plaintiff's physical health issues.[5] Plaintiff has not grieved any legal claim based on his mental health treatment and care. Accordingly, the claims against the mental health professionals Defendants Stillman, Rush, Quinn, Zeiber, and Stairways Behavioral Health, will be dismissed.

Moreover, Plaintiff does not grieve the actions of Deputy Warden Holman in any of these grievances. Plaintiff's opposition briefs make clear that Plaintiff's theory of liability against Deputy Warden Holman is based on his actions in denying Plaintiff's grievances. ECF No. 56. Such a theory does not provide liability under § 1983. Liability in a civil rights action cannot be based on *respondeat superior* alone, and defendants in such actions must be alleged to have had personal involvement in the wrongs complained of. See Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). If an official's only involvement is the investigation or adjudication of an inmate grievance after the event giving rise to the grievance has happened, that is not considered to be personal involvement. Id. at 1208. The claims against Defendant Holman will be dismissed.[6]

---

[5] Beginning on September 26, 2012, Plaintiff filed Grievances #1559, 1560, 1561, and 1562. See ECF No. 9-5; ECF No. 9-6; ECF No. 9-7; ECF No. 9-8.

[6] Furthermore, non-medical prison staff cannot be held liable for deliberate indifference so long as an inmate was being treated by medical staff. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (warden cannot be considered deliberate indifference by failing to directly respond to

Finally, although Plaintiff utilized the administrative remedy process to grieve issues involving his physical health complaints, it is unclear whether he fully and properly exhausted his administrative remedies on these issues. Defendants indicate that Plaintiff did not file appeals on any of the grievances, but Plaintiff maintains that he filed appeals and that instead of answering his appeals, prison staff including the Deputy Warden, a pod counselor, and "one of the named Defendants" met with him in order to "smooth things over" and "come to an understanding." ECF No. 56, page 11. Plaintiff has provided copies of his grievance appeals. See ECF No. 56-1, pages 6-9.[7]

Interference with an inmate's attempts at exhaustion may impact the *availability* of the administrative remedy process within the meaning of 42 U.S.C. § 1997e. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."). See also McKinney v. Guthrie, 2009 WL 274159, at *1 (3d Cir. 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."). Taking Plaintiff's allegations of interference as true for purposes of this motion only, it is unclear whether certain administrative remedies were available to him. Accordingly, the motion to dismiss should be denied at this stage of the litigation. This issue may be revisited upon a more fully developed record.

---

a medical complaint by a prisoner who was receiving treatment by the prison doctors); Hemmingway v. Falor, 2006 WL 2786866, *4 (3d Cir. Sept.28, 2006).

[7] Plaintiff further explains that "At no time did the Plaintiff agree to drop or sign off on any grievances or grievance appeals for any reason. Plaintiff did not agree to drop any grievances or grievance appeals in return for mental health counselling or treatment from one of the above named Defendants – a Defendant who argued and fought vehemitly [sic] against having to spend any time giving the Plaintiff any mental health counselling or treatment; making Plaintiff even more depressed and suicidal." ECF No. 56, page 11.

## IV. The Entity Defendants

### A. Erie County Prison

Erie County Prison is not an appropriate defendant in a § 1983 action and must be dismissed. The Eleventh Amendment proscribes actions in the federal courts against county prisons. Chilcott v. Erie County Domestic Relations, 283 Fed. App'x 8, 10 (3d Cir. 2008) citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) and Edelman v. Jordan, 415 U.S. 651, 663 (1974). Furthermore, Erie County Prison is not a "person" as defined under § 1983 and thus, cannot be sued under that statute. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Erie County Prison will be dismissed as a party to this action.

### B. Wexford Health Services

A private health company providing service to inmates, such as Wexford, "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003). In order to hold Wexford liable, Plaintiff must allege that it had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue. Id. at 583-84. Here, Plaintiff has made no such allegation in his complaint. However, in his opposition brief, Plaintiff complains that Wexford denied him medical care based on "economic reasons" and that Wexford has "an unwritten policy … to deny inmates treatment as long as possible in the hopes that they would be released, make bail, or be quickly sentenced and sent into the State Prison System, thereby 'passing the buck' and relieving the financial burden from for profit private provider Wexford … in having to pay for profit sucking treatment for said inmates." ECF No.

11

57, page 9. Given that Plaintiff is a *pro se* litigant, this claim will be allowed to proceed at this early stage of the litigation.

### V. Plaintiff's motion for appointment of medical expert

Pennsylvania Rule of Civil Procedure 1042.3 requires that a Certificate of Merit accompany a claim for professional liability brought against certain designated licensed professionals. Pa. R. Civ. P. 1042.3. The Certificate of Merit must contain a written statement from "an appropriate licensed professional" declaring whether the professional liability claim is brought directly (the defendant's conduct fell below the standard of care, bringing about the harm), indirectly (the conduct of persons under the direction of the defendant fell below the standard of care, bringing about the harm), or that no expert testimony will be necessary to prosecute the claim against that defendant. Id. This requirement is considered "substantive law … and must be applied as such by federal courts." Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 260 (3d Cir. 2011). Under Rule 1042.3(a), a plaintiff is required to file the Certificate of Merit within sixty days of the filing of claim where it is alleged that "a licensed professional deviated from the acceptable professional standard." Schmigel v. Uchal, 2014 WL 3397669, at *2-3 (W.D. Pa. Jul. 11, 2014).

All medical professional Defendants have raised Plaintiff's failure to file a Certificate of Merit in their dispositive motions. In response to Defendants' arguments in this regard, Plaintiff has filed a "Motion for Appointment of a Medical Expert" [ECF No. 49]. Plaintiff explains that although he "has scoured the inmate law library[,] he has found no answer to the question of how an indigent, incarcerated individual can acquire either a Certificate of Merit or a medical expert from behind prison walls." Id. This Court recognizes the difficulty that a *pro se*

incarcerated litigant has in complying with Rule 1042.3. In the interests of fairness to the *pro se* litigant, this Court will dismiss Plaintiff's motion for appointment of a medical expert without prejudice and, will instead, send the matter to the Clerk of Courts and direct him to attempt to find counsel who will represent Plaintiff in this action (the remaining claims of which are: Count II – negligence against Mealy for failure to treat; Count III – negligence against Doe/Petersen for failure to treat; and Count IV – Eighth Amendment deliberate indifference against Laufenberg, Mealy, Doe/Petersen, and Wexford).

An appropriate Order follows.